UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:        Hookup, L.L.C.,                                   Case No. 12-33202-KRH
                                                                Chapter 11
              Debtor.

## MEMORANDUM OPINION

Before the Court in this Chapter 11 case is the Motion to Compel Turnover of Rent (the "Motion") filed by Hookup, L.L.C. (the "Debtor") against Warehouse Stores, Inc. ("Warehouse" or "Respondent").[1] Warehouse raised an objection to the Motion on the grounds that the requested relief could not be obtained through bringing a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") but only by commencing an Adversary Proceeding under Bankruptcy Rule 7001. Debtor countered that the withholding of post-petition rent was a ruse to recover alleged pre-petition claims in violation of the automatic stay provided by 11 U.S.C. § 362 and that a stay violation could be pursued as a contested matter.[2]

By Order entered September 27, 2012, the Court sustained Respondent's objection in part by bifurcating the proceedings. The Court converted that portion of the Motion requesting turnover of rent under § 542 of the Bankruptcy Code into an adversary proceeding.[3] That portion of the Motion seeking the imposition of sanctions for Warehouse's alleged intentional violation of the automatic stay was allowed to proceed separately as a contested matter.

---

[1] Debtor seeks to recover $24,033.29 in post-petition rent. Debtor's figures are based on a $233.33 per diem rate, calculated using a thirty-day month.

[2] Title 11 of the United States Code may be referred to hereinafter as the "Bankruptcy Code."

[3] The adversary proceeding is Case No. 12-03185 and is pending separate and apart from the remainder of this Motion.

The Court conducted an evidentiary hearing (the "Hearing") in the contested matter on September 25, 2012, at the conclusion of which, the Court took the contested matter under advisement. The Court requested the parties simultaneously submit memoranda of law in the main case on October 9, 2012 by 5 p.m. Debtor complied with this request. Warehouse did not. It tardily filed a pleading, styled "Post-Hearing Memorandum, Objection to Any Summary Determination, Statement of Need for Discovery, and Request for Trial by Jury," in the related adversary proceeding.[4] The Court has, nevertheless, considered the late-filed Post-Hearing Memorandum filed in the adversary proceeding as Warehouse's brief in response.

This memorandum opinion sets forth the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 as made applicable to this contested matter by Bankruptcy Rule 9014(c).[5] The Court has subject-matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 (2006) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 16, 1984. This is a core proceeding, *id.* § 157(b)(2)(A), (E), in which final orders or judgments may be entered by a bankruptcy court, *id.* § 157(b)(1). Venue is appropriate in this Court. *Id.* §§ 1408 and 1409.

Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on May 23, 2012 (the "Petition Date"), and continues to operate as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108 (2006).[6] Debtor is a Virginia limited liability company, which owns a

---

[4] On October 10, 2012, Warehouse filed a Motion for Leave to File Post-Hearing Memorandum.

[5] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

[6] On the Petition Date, Debtor filed an adversary proceeding against Warehouse to compel turnover of property to the estate. Docket No. 4. In that adversary proceeding, Debtor sought a Court order compelling Warehouse to turn over leased property so that Debtor could take the appropriate action to use, sell, lease, or exempt the property

parcel of real estate and improvements located at 1500 Chamberlayne Avenue, Richmond, Virginia 23222 (the "Property"). The improvements on the Property primarily consist of a 54,000-square-foot commercial warehouse. Respondent is a Virginia corporation, whose primary business is the sale of furniture, fixtures, decorations, and antique collectibles to retail customers.

On June 1, 2011, Debtor and Warehouse entered into a commercial lease agreement (the "June Lease"). Under the terms of the June Lease, Warehouse agreed to occupy 12,000 square feet of the Property for a two-year term, in exchange for $2000.00 base rent and a percentage of sales per month.[7] The June Lease was superseded by a subsequent commercial lease agreement into which the parties entered on September 1, 2011 (the "Original September Lease"). Debtor's Ex. A. The Original September Lease provided that Warehouse would occupy 20,100 square feet of the Property (the "Leased Premises") for a three-year term, in exchange for $7000.00 base rent per month. *Id.* at 1.

On or about September 5, 2011, Debtor and Warehouse entered into an addendum (the "Addendum") to the Original September Lease (the Original September Lease and the Addendum will hereinafter be collectively referred to as the "Lease"). Debtor's Ex. B. The Addendum permits Warehouse to occupy a loft area (the "Loft Area") located in the rear of the

---

pursuant to §§ 363 and 542 of the Bankruptcy Code. Complaint at 7, *Hookup, L.L.C. v. Warehouse Stores, Inc.*, No. 12-03108-KRH (Bankr. E.D. Va. May 23, 2012). On July 10, 2012, Debtor filed a motion to voluntarily dismiss the adversary proceeding. Plaintiff's Motion for Voluntary Dismissal of Adversary Proceeding, *Hookup, L.L.C.*, No. 12-03108-KRH. The Court granted the Plaintiff's Motion to Dismiss on August 28, 2012. Order Granting Motion to Dismiss Adversary Proceeding, *Hookup, L.L.C.*, No. 12-03108-KRH.

[7] A copy of the June Lease is attached as Exhibit A to the Motion.

Property above space occupied by Jefco of Virginia, Inc. ("Jefco").[8] *Id.* at 1. Under the terms of the Lease, Warehouse agreed to pay a minimum of $7000.00 base rent per month, in two equal installments of $3500.00 to be paid on the 4th and 10th of each month.[9] *Id.*

In both January and February 2012, Warehouse failed to pay one of the two monthly rental installments of $3500.00. Debtor provided written notice to Warehouse of its default on either February 22, 2012 or February 24, 2012.[10] While there appears to be disagreement between the parties as to the timing of the notice, the General District Court for the City of Richmond found that notice was given on February 24th.[11] On March 8, 2012, Debtor locked the Loft Area, denying Warehouse access to the Loft Area but not to the remainder of the Leased Premises. On March 12, 2012, Debtor mailed Warehouse a letter, purporting to terminate the Lease.

---

[8] There was conflicting evidence introduced at the Hearing concerning the size of the Loft Area. Debtor's real estate agent, who is currently listing the Property for sale, testified that he had measured the space at 200 square feet. The Chairman of Warehouse estimated the size of the Loft Area to be 918 square feet. Under either version of the testimony, the size of the Loft Area is relatively insignificant in proportion to the overall size of the Leased Premises. As the size of the Loft Area is irrelevant to the Court's decision, the Court need not determine the actual square footage.

[9] Although the Addendum recites that the loft would be leased for an additional $1000.00 per month, the agreed-upon base rent in the Lease did not change from the Original September Lease. *Compare* Debtor's Ex. A, at 1 (total base rent is $7000.00), *with* Debtor's Ex. B., at 1 (total base rent is $7000.00).

[10] The Lease required written notice of default. It provides:

> *If default shall at any time be made by Tenant in the payment of rent* when due to Landlord as herein provided and *if said default shall continue for fifteen (15) days after written notice thereof shall have been given to Tenant by Landlord . . . Landlord may declare the term of this Lease ended and terminated by giving Tenant written notice* of such Intention, and if possession of the Leased Premises is not surrendered, Landlord may reenter said premises. Landlord shall have, on addition to the remedy above provided, any other right or remedy available to Landlord on account of any Tenant default, either in law or equity. Landlord shall use reasonable efforts to mitigate its damages.

Debtor's Ex. A. ¶ 14, at 4 (emphasis added).

[11] This issue is not before the Court and, therefore, will not be addressed further in this opinion.

On May 8, 2012, Debtor filed an unlawful detainer and eviction suit (the "Unlawful Detainer Action") against Warehouse in the General District Court for the City of Richmond (the "Richmond General District Court") (Case No. GV12016419-00).  Through the Unlawful Detainer Action, Debtor sought, inter alia, (1) to re-possess the Leased Premises based upon Debtor's proper termination of the Lease; and (2) to recover rent owed by Warehouse to Debtor for January 1, 2012 through March 12, 2012, and related lease termination damages (the "Pre-petition Rent").

In June 2012, the Richmond General District Court heard the Unlawful Detainer Action.  On June 29, 2012, the Richmond General District Court entered judgment in favor of Warehouse.  Specifically, the Richmond General District Court held that Debtor had failed to provide Warehouse with the fifteen-day cure period required by the Lease after mailing the notice of default.  The Richmond General District Court ordered Debtor to remove the lock placed on the Loft Area.  The Richmond General District Court further ordered the funds that had been paid into court and that were being held in escrow be returned to Warehouse.  The Richmond General District Court failed to address the issue of Warehouse's liability to Debtor for the non-payment of the Pre-petition Rent.  At the Hearing before this Court, Debtor and Warehouse both agreed that, in accordance with the Order issued by the Richmond General District Court, the lock had been removed from the Loft Area by July 6, 2012.  Debtor has appealed the ruling of the Richmond General District Court to the Circuit Court for the City of

Richmond (the Circuit Court").[12]  A jury trial is scheduled in the Circuit Court on December 21, 2012.

Debtor filed this contested matter on September 5, 2012. Docket No. 40. Warehouse maintains that it does not have to pay post-petition rent to Debtor because Debtor is in material breach of the Lease.[13] Docket No. 44. Warehouse argues that it has a right to offset rent due under the Lease pursuant to § 553 of the Bankruptcy Code. Consistent with its litigation position, Warehouse has failed and refused to pay any rent to Debtor since the Petition Date. Nevertheless, Warehouse has continued to occupy the Leased Premises. Debtor contends: (1) that it is not in violation of the Lease; (2) to the extent Debtor did fail to provide Warehouse with the requisite fifteen-day cure period required by the Lease, that breach occurred pre-petition and cannot give rise to an entitlement to offset post-petition rent; and (3) that Warehouse failed to give notice of any alleged breach, as required by the terms of the Lease, until September 18, 2012. Debtor's Ex. C.

Warehouse delivered a letter to Debtor on September 18, 2012, (the "September 18 Correspondence") wherein it informed Debtor that the City of Richmond had condemned the Loft Area because the Loft Area did not have running water.[14] *Id.* Further, Warehouse claimed that Debtor had materially breached the Lease by:

---

[12] A copy of the Notice of Appeal is attached to Debtor's Motion for Voluntary Dismissal of Adversary Proceeding No. 12-03108-KRH. Under Virginia law, an appeal from the general district court to the circuit court entitles the appellant to a trial de novo. *See* Va. Code Ann. §§ 16.1-113 to -114 (2010).

[13] Warehouse maintains that the Richmond General District Court found that Debtor had materially breached the Lease when it ordered that the padlock on the Loft Area be removed within seven days.

[14] A property inspector for the City of Richmond testified at the Hearing that the City's building code does not require the Loft Area to have running water. A violation arose, however, because the Loft Area was being inhabited. Debtor points out that the Lease is a commercial lease and, as such, Warehouse had no right to inhabit

  (1) Misappropriation and conversion of the security deposit, in violation of ¶ 18 of the Lease and Virginia law;
  (2) Misappropriation and conversion of rent for Debtor's personal purpose in violation of ¶¶ 2.C and 8 of the Lease and Virginia law;
  (3) Failure to pay all charges for water and electricity, in violation of ¶¶ 8 and 15 of the Lease;
  (4) Trespass upon the Leased Premises, including removal of Warehouse's mailbox, and unlawful lock out of the Loft Area, in violation of ¶¶ 8 and 10 of the Lease and Virginia law;
  (5) Unlawful littering of the side lot of the Property, in violation of ¶¶ 10 and 15 of the Lease; and
  (6) Repeated violations of the Richmond City Code and failures to comply with all laws, orders, ordinances and other public requirements affecting the Leased Premises, in violation of ¶ 27 of the Lease.

*Id.* These six enumerated violations were litigated in the Richmond General District Court. All were alleged to have occurred pre-petition. The failure to maintain running water to the Loft Area was the only noticed post-petition violation.[15] The September 18 Correspondence detailed certain damages Warehouse had incurred as a result of the noticed violations and advised Debtor that it had withheld past rents and would be withholding future rents to offset for these damages. On September 24, 2012, six days after receiving Warehouse's September 18 Correspondence, Debtor restored water to the Loft Area and had the condemnation notice removed. Although Warehouse did lose temporary access to the Loft Area due to the failure noticed in the September

---

any portion of the Leased Premises. Accordingly, Debtor argues that it had no duty under the Lease to provide water to the Loft Area in the first instance. Nevertheless, Debtor timely rectified the alleged violation by having water restored to the Loft Area.

[15] Although not included as a noticed default in the September 18 Correspondence, Warehouse introduced evidence at the Hearing that Jefco's post-petition business operation interfered with Warehouse's quiet enjoyment of the Loft Area. Jefco ran a granite production business in the back portion of the Property that Warehouse did not lease. Debtor's Br. 7. Jefco was already a tenant in the Property at the time Warehouse executed its Lease with Debtor. Debtor's Ex. B. The Loft Area was located immediately above the space that Jefco occupied. Guthrie Aff. ¶ 7. While Jefco's granite production business may very well have caused noise and dust, Warehouse's complaint about the operation is disingenuous given that Warehouse was fully aware of the scope and extent of Jefco's granite production business when it entered into the Lease. Furthermore, Jefco, having vacated the Property in August 2012, was no longer a tenant in the building when the September 18 Correspondence was sent. Guthrie Aff. ¶ 7, 30.

18 Correspondence to maintain running water to the Loft Area, Warehouse never had to curtail its operations in the other areas of the Leased Premises, including the main showroom.

In its Post-Hearing Memorandum, Warehouse objects to any determination of Debtor's stay violation claim without a jury trial on the merits and an opportunity for discovery. Warehouse's objection is without merit. The contested matter is an equitable proceeding under 11 U.S.C. §§ 105 and 362(k) to enforce the Bankruptcy Code's statutory injunction that protects and preserves the bankruptcy estate. As such, the Motion does not give rise to a right of trial by jury under the Seventh Amendment of the United States Constitution.

Furthermore, an action for violation of the automatic stay may be brought by motion rather than by complaint. *Phillips v. Lehman Bros. Holdings, Inc.* (*In re Fas Mart Convenience Stores, Inc.*), 318 B.R. 370 (Bankr. E.D. Va. 2004); *In re Dunning*, 269 B.R. 357, 367 (Bankr. N.D. Ohio 2001); *In re Timbs*, 178 B.R. 989, 994 (Bankr. E.D. Tenn. 1994); *see also Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289 (4th Cir. 1986). Rule 9014 of the Federal Rules of Bankruptcy Procedure provides parties with the opportunity to conduct discovery, the opportunity to subpoena and present witnesses and other evidence and the opportunity to argue the merits of the case.[16] Fed. R. Bankr. P. 9014; *see also Dean v. Global Fin. Credit, LLC* (*In re Dean*), 359 B.R. 218, 221-22 (Bankr. C.D. Ill. 2006). Accordingly, Warehouse suffered no deprivation of any procedural due process right as a result of the Motion being heard as a contested matter, rather than as an adversary proceeding.

Additionally, it is undisputed that the Motion for sanctions for violation of the automatic stay was properly served upon Warehouse and its counsel. It is also undisputed that Warehouse

---

[16] Bankruptcy Rule 9014 provides that certain rules applicable to adversary proceedings apply to contested matters, including Bankruptcy Rules 7026, 7028-37, 7052, 7054-7056 and 7064. Fed. R. Bankr. P. 9014(c).

8

filed an opposition to the Motion and that it actively participated at the Hearing. Warehouse had the opportunity to conduct discovery prior to the Hearing if it had desired to do so. None of the post-Hearing issues Warehouse now wants to develop through discovery are material to the question whether a stay violation occurred. Warehouse had sufficient notice of the Hearing to "apprise [it] of the pendency of the action and afford [it] an opportunity to present [its] objections." *Mullane v. Cent. Hanover Trust Co.*, 339 U.S. 306, 314 (1950).

In its response to the Motion, at the Hearing, and in its Post-Hearing Memorandum, Warehouse asserted that it has the right to offset its claims against Debtor by withholding post-petition rent under the Lease.[17] Although the Bankruptcy Code recognizes a creditor's right of setoff, 11 U.S.C. § 553, this right is construed narrowly. *TM Carlton House Partners, Ltd. v. Career Planners Inc.* (*In re TM Carlton House Partners, Ltd.*), 93 B.R. 859, 867 (Bankr. E.D. Pa. 1988). A creditor may only "offset a *mutual debt* owing by such creditor to the debtor *that arose before the commencement of the case* . . . against a claim of such creditor against the debtor *that arose before the commencement of the case* . . . ." § 553(a) (emphasis added). Thus, the right of setoff only applies to mutual pre-petition debts. *Lubman v. Sovran Bank, N.A.* (*In re A&B Homes, Ltd.*), 98 B.R. 243, 248 (Bankr. E.D. Va. 1989). As Warehouse's obligation to pay

---

[17] Warehouse alleges it has the following pre-petition claims against Debtor that support its right of offset:

| Description of Claim | Amount of Claim |
| --- | --- |
| Electrical Repairs and Updates | $3141.37 |
| Roof Repairs | $1200.00 |
| Plumbing Fees | $1626.55 |
| HVAC Repairs | $750.00 |
| Utilities Paid | $1425.11 |
| Loss of Sales (Loft Area) [03/08/2012 – 08/23/2012] | $22,500.00 |
| Rent Ordered Returned to Tenant | $17,500.00 |
| Claims Against Landlord | $250,000.00+ |
| Total | $298,143.03+ |

rent arises post-petition, § 553 of the Bankruptcy Code does not excuse Warehouse's failure to pay rent.

Furthermore, the right of setoff recognized by § 553 of the Bankruptcy Code is subject to the automatic stay. § 553(a) ("Except as otherwise provided . . . in sections 362 and 363 of this title . . ."). The filing of a petition under Title 11 operates as an automatic stay of certain actions against the debtor. *Id.* § 362(a). The automatic stay prevents, inter alia, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." *Id.* § 362(a)(6). Specifically, § 362 of the Bankruptcy Code operates as a stay of "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim of the debtor." *Id.* § 362(a)(7). This provision applies to bar all acts, direct and indirect, to collect a pre-petition debt. *Gordon Props., LLC v. First Owners Ass'n of Forty Six Hundred* (*In re Gordon Props., LLC*), 460 B.R. 681, 692 (Bankr. E.D. Va. 2011) (citing a plethora of cases where automatic stay violations arose in unusual or otherwise mundane circumstances). Additionally, the stay applies to "[t]he failure to act when one has a duty to act." *Id.* at 696. Regardless of whether the act or failure to act "may have other legitimate purposes, . . . if it is also an act in violation of § 362(a), the other purposes do not excuse violating or disregarding § 362(a)" *Id.* at 694.

Under no circumstances did Warehouse have the unilateral right to withhold post-petition rent on account of the alleged pre-petition material violations of the Lease. Before engaging in any setoff, Warehouse was first required to obtain relief from stay. To date, no such relief has been requested in this case. The unilateral post-petition offset effected by Warehouse constitutes a clear violation of the automatic stay. *See* § 362(a)(7).

Warehouse asserts that it also has post-petition claims against Debtor that justify its conduct.[18] While, the Court did not find the assertion of any of these post-petition claims to be particularly credible, they nevertheless cannot give rise to a claim of setoff under § 553 of the Bankruptcy Code. That section permits only the setoff of pre-petition debts. *In re A&B Homes, Ltd.*, 98 B.R. at 248. Furthermore, the Lease itself limits Warehouse's right to setoff rent.[19] Warehouse would have had to satisfy several requirements before it could even assert such a right. First, Debtor would have had to have been in default of some Lease obligation. Second, Warehouse would have had to have provided written notice of that claimed default. Third,

---

[18]  Warehouse alleges it has the following post-petition claims against Debtor that support its right of offset:

| Description of Claim | Amount of Claim |
|---|---|
| Claims Against Debtor & Jefco | $575,000.00+ |
| Claims Against Porter | $250,000.00+ |
| Loss of Sales (Loft Area) [05/24/2012 – 09/24/2012] | $36,000.00 |
| Loss of Future Sales (Loft Area) | $207,000.00+ |
| Total | $1,068,000.00+ |

[19]  Unlike the statutory remedies available under residential leases, commercial leases are governed by common law. *Halifax Eng'g, Inc. v. Doyle, Inc.*, 23 Va. Cir. 466, 467 (1991). Thus, under the common law, "the tenant's covenant to pay rent and the landlord's express covenants in the leases [a]re viewed as independent . . . ." *Id.* at 468. In the instance where the landlord violates the lease's covenants, the tenant's only relief is "to bring a separate action for damages caused by the landlord's breach, or to assert a counterclaim in the landlord's action for accrued rental payments in which the Court could set off the tenant's recovery from the landlord's judgment. . . . However, the tenant was never entitled to remain in possession *and* withhold rental payments." *Id.* (emphasis added).

The parties altered this common law rule in the Lease, as they had the right to do, *see RW Power Partners, L.P v. Virginia Electric & Power Co.*, 899 F. Supp. 1490, 1495 (E.D. Va. 1995), to provide for a limited right of setoff:

> If there is a default with respect to any of Landlord's covenants, warranties or representations under this Lease, and if the default continues more than fifteen (15) days after notice in writing from Tenant to Landlord specifying the default, Tenant may, at its option and without affecting any other remedy hereunder, cure such default and deduct the cost thereof from the next accruing installment or installments of rent payable hereunder until Tenant shall have been fully reimbursed for such expenditures, together with interest thereon at a rate equal to the lesser of twelve percent (12%) per annum or the then highest lawful rate. If this Lease terminates prior to Tenant's receiving full reimbursement, Landlord shall pay the unreimbursed balance plus accrued interest to Tenant on demand.

Debtor's Ex. B ¶ 26, at 6.

Debtor would then have had fifteen days in which to cure the default. Fourth, if Debtor had failed to timely cure the default, then Warehouse would have been permitted to cure the default. Finally, if Warehouse did cure the default, then (and only then) would Warehouse have been entitled under the Lease terms to assert a right to withhold the cost of the cure from the next rental installment.

There is no evidence that Warehouse ever fulfilled these requirements. The only notice of a post-petition default was that set forth in Warehouse's September 18 Correspondence.[20] The evidence clearly shows that Debtor promptly cured the alleged post-petition default within the fifteen-day cure period provided by the Lease agreement.[21] But Warehouse was withholding post-petition rent long before it delivered its September 18 Correspondence. Not only was withholding rent a clear violation of the automatic stay, but it was also an obvious violation of the Lease itself.

Even if Warehouse had complied with the Lease, the set off of an alleged post-petition claim would still constitute a stay violation. The automatic stay protects three entities: first, the debtor, § 362(a)(1), (2), (6), (7), (8); second, property of the debtor, *id.* § 362(a)(5); and third, property of the estate, *id.* § 362(a)(2), (3), (4). Property of the estate is defined very broadly in the Bankruptcy Code to include "all legal or equitable interests of the debtor in property as of the

---

[20] Mr. Joseph Guthrie, Chairman of Warehouse, testified at the Hearing that the September 18 Correspondence was the only post-petition default that Warehouse properly noticed in accordance with the Lease.

[21] Warehouse acknowledges that the default alleged in the September 18 Correspondence was timely cured. *See* Guthrie Aff. ¶ 53 ("Because Debtor's material breaches of the Lease abated on or about September 24, 2012, and without waiving any claims against Debtor and its agents that arose prior to September 24, 2012 and in mitigation of its ongoing losses, Tenant intends to resume paying Rent to Debtor on October 4, 2012 in accordance with the terms and conditions of the Lease.").

commencement of the case," *Id.* § 541(a)(1), as well as all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." *Id.* § 541(a)(6).

In this case, property of the estate includes (1) the Property, (2) the Leased Premises, (3) the Lease, *see In re Henderson*, 245 B.R. 449, 454 n.14 (Bankr. S.D.N.Y. 2000); *In re Taylor*, 54 B.R. 882, 886 (Bankr. E.D. Va. 1985) (finding, in a Chapter 7 case, leases become property of the estate, provided proper notice of the bankruptcy to the lessor); and (4) the post-petition rent, *see Equitable Life Assurance Soc'y v. James River Assocs.* (*In re James River Assocs.*), 156 B.R. 494, 498 (E.D. Va. 1993) (holding, in case where lessee had failed to pay any post-petition rent, that rent due to debtor/lessor was property of the estate). Accordingly, the automatic stay applies to all four.

The automatic stay acts to prevent "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *Id.* § 362(a)(3). Unless and until the Lease is rejected by Debtor, Warehouse has the affirmative obligation to perform thereunder.[22] Warehouse was not entitled both to deprive Debtor of the use of the Leased Premises and to set off post-petition rent. By so doing, Warehouse exercised control over estate property in violation of the automatic stay.[23] Regardless of whether the alleged defaults occurred pre-petition or post-petition, Warehouse had no right to withhold rent in order

---

[22] If a lease has not been assumed or rejected, the debtor-in-possession is "entitled to enforce debtor['s] rights under the agreement relating to post-petition date obligations and benefits until a final determination is made and approved by the court." *Phillips v. McLane Co.* (*In re Fas Mart Convenience Stores*), 296 B.R. 414, 420 (Bankr. E.D. Va. 2002) (issuing temporary restraining order preventing non-debtor from breaching executory contract); *see also Data-Link Sys., Inc. v. Whitcomb & Keller Mortg. Co., Inc.* (*In re Whitcomb & Keller Mortg. Co., Inc.*), 715 F.2d 375, 379-80 (7th Cir. 1983) (holding that bankruptcy court could compel non-debtor's performance under terms of executory contract until debtor decided to assume or reject).

[23] The Bankruptcy Code grants a lessee the right to offset against the rent reserved under a lease only in one instance. That is where the lease has been rejected. *See* 11 U.S.C. § 365(h)(1)(B). The Lease between Debtor and Warehouse has not been rejected.

to setoff the damages it claims to have incurred without first obtaining relief from the automatic stay.

Not all violations of the automatic stay warrant sanctions. In order to be sanctionable, the creditor must willfully violate the stay. *Id.* § 362(k)(1) ("[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."). "To constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *Citizens Bank of Md. v. Strumpf* (*In re Strumpf*), 37 F.3d 155, 159 (4th Cir. 1994) (citing *Budget Serv. Co.*, 804 F.2d at 292-93; *Cuffee v. Atl. Bus. & Cmty. Dev. Corp.* (*In re Atl. Bus. & Cmty. Corp.*), 901 F.2d 325, 329 (3d. Cir. 1990)), *rev'd on other grounds*, 516 U.S. 16 (1995). There is a three-part test to determine whether sanctions are appropriate: "(1) the defendant must have known of the existence of the stay; (2) the defendant's acts must have been intentional; and (3) these acts must have violated the stay." *In re Gordon Props., LLC*, 460 B.R. at 691 (quoting *Brown v. Chestnut* (*In re Chestnut*), 422 F.3d 298, 302 (5th Cir. 2005)).

"Courts have consistently held that a creditor with knowledge of the pending bankruptcy case is charged with knowledge of the automatic stay." *Kline v. Tiedemann* (*In re Kline*), 424 B.R. 516, 524 (Bankr. D.N.M. 2010) (citing *In re Tezla*, No. 08-12700DWS, 2009 WL 212542, at *2, 2009 Bankr. LEXIS 136, at *6 (Bankr. E.D. Pa. Jan. 28, 2009); *In re Long*, No. 07-60011-7, 2009 WL 981134, at *4, 2009 Bankr. LEXIS 4433, at *9-10 (Bankr. D. Mont. Jan. 9, 2009); *KCH Servs., Inc. v. Nordam Grp., Inc.*, 345 B.R. 542, 548 n.5 (W.D.N.C. 2006)); *see also Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1191 (9th Cir. 2003).

The Court finds that Warehouse had knowledge of the commencement of Debtor's bankruptcy case because (1) Warehouse was properly served with notice of Debtor's bankruptcy case; and (2) Warehouse actively participated in the now-closed adversary proceeding, No. 12-03108. First, on May 26, 2012, the Clerk's Office mailed a notice of the Chapter 11 case to all Debtor's creditors, including Warehouse. Debtor's Br. 2. This notice was specifically sent to David Poppe, as required by the Lease's notice provisions, and also to Warehouse's counsel. *Id.* Counsel for Warehouse thereafter filed a notice of appearance in the case on June 27, 2012. Second, on the Petition Date, Debtor filed a complaint against Warehouse in adversary proceeding No. 12-03108.[24] Warehouse filed an answer to the complaint in the adversary proceeding slightly a month after the Petition Date. The alleged violation of the automatic stay began on the Petition Date and it has continued to the present. Warehouse knew of the existence of the stay.

Furthermore, the failure by Warehouse to pay rent was intentional. It did not result from Warehouse's inability to meet its financial obligations. Warehouse avers that it refused to pay post-petition rent because Debtor failed to fulfill its obligations under the Lease. As a result of Debtor's alleged default, Warehouse maintains that it was excused from paying rent in order to setoff its damages. The Court finds that Warehouse's refusal to pay rent to Debtor was a misguided but deliberate attempt to collect on its claims against Debtor.

The Court has already found that Warehouse's failure to pay post-petition rent was a violation of the automatic stay pursuant to § 362(a)(3), (6), and (7). Warehouse was not unilaterally entitled to offset against the rent reserved under the Lease to recover its damages.

---

[24] *See supra* note 6.

Warehouse could have filed a proof of claim for the damages it claims to have incurred. Warehouse could have filed a motion for relief from stay.[25] However, Warehouse was never entitled to withhold post-petition rent to offset the damages Warehouse claims Debtor caused. By so doing, Warehouse has caused injury to the bankruptcy estate.

A finding of civil contempt is not a necessary predicate for the imposition of sanctions under § 362 of the Bankruptcy Code. Debtor is entitled to recover any damages it may have incurred as a result of the stay violation including costs and attorneys' fees. § 362(k); *see Budget Serv. Co.*, 804 F.2d at 292 (interpreting "individual" to include a corporate debtor). The Court will conduct an evidentiary hearing to determine the appropriate measure of damages and to determine what sanctions should be imposed.

A separate Order shall issue.

ENTERED: _____

        /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

---

[25] *Gordon Properties* discusses this option at length in finding a stay violation:

> One cardinal rule of bankruptcy practitioners is, if there is doubt as to whether the automatic stay applies, file a motion. Assert that the stay does not apply and request, in the alternative, that if it does apply, that relief from it be granted. Or, simply file a motion for relief from the automatic stay.

460 B.R. at 699.

Copies to:

**Hookup, L.L.C.**
8204 Chamberlayne Road
Richmond, VA  23227

**Robert J. Rogers**
8204 Chamberlayne Road
Richmond, VA  23227

**David K. Spiro**
**Sheila G. de la Cruz**
Hirschler Fleischer, P.C.
P.O. Box 500
Richmond, VA  23218-0500

**Warehouse Stores, Inc.**
1200 W. Marshall Street
Richmond, VA  23220

**Steven S. Biss**
Law Office of Steven S. Biss
300 West Main Street
Suite 102
Charlottesville, VA  22903

**Robert B. Van Arsdale**
Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, VA  23219