UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:      Hookup, L.L.C.,                                    Case No. 12-33202-KRH
                                                                                      Chapter 11
                Debtor.

**MEMORANDUM OPINION**

Before the Court in this Chapter 11 case is the Emergency Motion for Civil Contempt, to Compel Compliance with Court Order, and to Impose Sanctions for Violation Thereof (the "Motion") filed by Hookup, L.L.C. (the "Debtor") against Warehouse Stores, Inc. ("Warehouse" or the "Respondent") and Joseph F. Guthrie ("Mr. Guthrie"), the Chairman of Warehouse, in his individual capacity, pursuant to 11 U.S.C. 105 and Rule 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[1]  An initial hearing on the Motion was held on December 18, 2012.  The Court continued that hearing to January 8, 2013, to allow the Respondent, its counsel, and Mr. Guthrie the opportunity to appear and participate.

On January 8, 2013, the Court conducted the continued hearing on the Motion (the "Hearing").  Immediately prior to the Hearing, Warehouse filed its own voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[2]  As a result of the commencement of the bankruptcy case, Warehouse is entitled to the protection afforded by the automatic stay of 11 U.S.C. § 362 ("a petition filed under section 301 . . . operates as a stay, applicable to all entities of the . . . continuation . . . of a judicial . . . proceeding against the debtor . . . .").  As Warehouse is now under the direct control and supervision of the interim trustee, no further need exists for

---

[1]  The "Bankruptcy Code" refers to title 11 of the United States Code.

[2]  Warehouse's Chapter 7 bankruptcy case was filed in this Court and is Case No. 13-30100.  Bruce Matson has been appointed interim trustee in the case.

injunctive relief against it. Upon the Debtor's request, the Court deferred the Hearing on the Motion as to Warehouse and proceeded as to Mr. Guthrie only.

Despite receiving good and proper notice of the Hearing, Mr. Guthrie neither appeared nor retained counsel to appear on his behalf at the Hearing. Although Counsel for Warehouse advised the Court that he did not represent Mr. Guthrie, Counsel for Warehouse did proceed to actively participate at the Hearing on Mr. Guthrie's behalf. At the conclusion of the Hearing, the Court granted the Debtor's Motion as to Mr. Guthrie and imposed sanctions against him.

This memorandum opinion sets forth the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 as made applicable to this contested matter by Bankruptcy Rule 9014(c).[3] The Court has subject-matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 16, 1984. This is a core proceeding, *id.* § 157(b)(2)(A), in which final orders or judgments may be entered by a bankruptcy court, *id.* § 157(b)(1). Venue is appropriate in this Court. *Id.* §§ 1408 and 1409.

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court on May 23, 2012 (the "Petition Date"), and continues to operate as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. The Debtor is a Virginia limited liability company, whose sole asset is a parcel of real estate and improvements located thereon at 1500 Chamberlayne Avenue, Richmond, Virginia (the "Property"). The improvements on the Property consist of a 54,000-square-foot commercial warehouse. Respondent is a Virginia corporation, whose primary business is the sale of furniture, fixtures, decorations, art, jewelry,

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

and antique collectibles to retail customers and public dealers. Mr. Guthrie serves as the Chairman of the Respondent's Board of Directors.

From June 1, 2011, through September 5, 2011, the Debtor and the Respondent entered into a series of lease agreements under which Warehouse agreed to lease approximately 50 percent of the Property to operate its retail business, in exchange for a minimum of $7000.00 base rent per month (the "Lease Agreement"). Warehouse refused to make any of the rental payments that came due after the Petition Date, contending that the Debtor's alleged pre-petition default entitled Warehouse to withhold the payment of rent. Nevertheless, Warehouse continued to use and occupy the leased premises.

On September 5, 2012, the Debtor filed a Motion to Compel the Turnover of Rent ("Motion to Compel"), requesting the Court order Warehouse to pay post-petition rent. The Court held a hearing on the Motion to Compel on September 25, 2012. By Order entered September 27, 2012, the Court bifurcated the Debtor's Motion to Compel, converting that portion of the Motion requesting the turnover of rent under § 542 of the Bankruptcy Code into an adversary proceeding, and allowing that portion of the Motion seeking sanctions for Warehouse's alleged violation of the automatic stay to proceed as a contested matter.[4]

On October 15, 2012, the Court issued a Memorandum Opinion and entered an Order, (1) finding that Warehouse had intentionally violated the automatic stay by unilaterally withholding rent and (2) granting the Debtor's motion for sanctions pursuant to § 362(k) of the Bankruptcy Code. The Court scheduled a hearing for November 7, 2012, (the "November 7 Hearing") to determine the appropriate measure of damages to be awarded against Warehouse.

---

[4] The adversary proceeding is Case No. 12-03185.

Seven days prior to the November 7 Hearing, and unbeknownst to the Debtor or to Counsel for Warehouse, Mr. Guthrie entered into a letter agreement (the "Letter Agreement") whereunder Warehouse agreed to sell, and Sky Nate Property Management, LLC ("Sky Nate") agreed to purchase, all of the assets of Warehouse for a total of $150,000 (the "Sales Proceeds"). Per the terms of the Letter Agreement, Warehouse received a $75,000 non-refundable deposit on or about November 1, 2012. Sky Nate paid the remaining $75,000 by wire transfer to the account of Warehouse on or about November 14, 2012.

The sales transaction between Warehouse and Sky Nate (the "Sales Transaction") was not disclosed to the Court at the November 7 Hearing. On the contrary, Mr. Guthrie appeared at the November 7 Hearing and testified that Warehouse had no money with which it could pay future rent.[5] In spite of the fact that Warehouse had over $35,000 in its bank account as of the date of the November 7 Hearing and in spite of the fact that Warehouse was anticipating the receipt of an additional $75,000 within the next two weeks, Mr. Guthrie allowed Warehouse's counsel to make multiple representations to the Court that Warehouse lacked the ability to pay any damage award the Court might make.[6]

The Court admitted into evidence, over the objection of the Debtor's counsel, a copy of what Mr. Guthrie testified was Warehouse's most recent financial statement. The espoused purpose of this evidence was to document Warehouse's poor financial condition. The financial statement that Mr. Guthrie produced painted a picture of Warehouse as a company with an ongoing business operation that was struggling financially. The balance sheet disclosed that Warehouse had assets valued at only $15,621 and had liabilities that greatly exceeded the value

---

[5] *See, e.g.*, Hr'g Tr. 71:8-11, Nov. 7, 2012.

[6] *See, e.g.*, *id.* 36:11-17, 22-23.

of its assets. The balance sheet did not reference the Sales Transaction nor did it reflect the receipt of the Sales Proceeds. As such, it was highly misleading.

Mr. Guthrie maintained at the hearing that his company was trying to make amends for its prior sanctionable conduct. Mr. Guthrie represented that, following the entry of the Court's Order on October 15, 2012 (the "October 15 Order"), Warehouse had tried to timely pay its ongoing post-petition rental obligations.[7] The Debtor denied ever receiving any such rental payments. The Court admitted into evidence copies of three checks proffered by Mr. Guthrie, purportedly showing Warehouse's payment of post-petition rent to the Debtor. These three checks were made in the exact amount and manner prescribed by the Lease Agreement. Mr. Guthrie did not disclose, however, that each of the three checks he tendered to the Court had been voided.[8]

After considering the evidence presented at the November 7 Hearing, the Court entered an Order on November 16, 2012 (the "November 16 Order"), which awarded actual damages to the Debtor and against Warehouse in the amount of $95,353.82 for post-petition rent, legal fees, and costs. The Court also awarded punitive damages of $50,000 to the Debtor and against Warehouse for the intentional violation of the automatic stay. The Court conditioned the imposition of the punitive damages – if Warehouse paid the Debtor the actual damages awarded within fifteen days from the date of entry of the Order, the punitive damages would be purged.

On December 14, 2012, the Debtor filed the instant Motion for Contempt, seeking a Court Order (1) compelling Warehouse and Mr. Guthrie to comply with the terms of the

---

[7] *See, e.g.*, *id.* 33:4-7.

[8] At the November 7 Hearing, Counsel for Warehouse made great fanfare over this payment issue, agreeing (if necessary) to cancel the three checks and to have them reissued in order to insure that the post-petition rent for September, October, and November was paid. *Id.* 85:12-14. As of the January 8, 2013, hearing, no post-petition rent had ever been received by the Debtor.

November 16 Order; (2) finding Warehouse and Mr. Guthrie, in his individual capacity, in civil contempt; and (3) imposing sanctions against Warehouse and Mr. Guthrie for their willful disregard of the November 16 Order.

Section 105 of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (2006). The Fourth Circuit has interpreted this subsection to empower bankruptcy courts to issue civil contempt orders. *Burd v. Walters* (*In re Walters*), 868 F.2d 665, 699-71 (4th Cir. 1989). Indeed,

> there is nothing unconstitutional in the grant of a contempt power to the bankruptcy court. There is inherent in the power of every court the power to stay proceedings in order to control the disposition of cases on its docket. This principle should follow regardless of whether the court is a state or federal court, and regardless of whether, if a federal court, it is a special court or one of limited jurisdiction. . . . [A]ny conduct which disrupts or threatens the inherent power of a court to control proceedings or to maintain the dignity and efficiency of the judicial process should in the first instance be punished by that court.

*Johns-Manville Sales Corp. v. Doan* (*In re Johns-Manville Corp.*), 26 B.R. 919 (Bankr. S.D.N.Y. 1983) (citations omitted).

Bankruptcy Rule 9020 governs contempt proceedings. The current version of Bankruptcy Rule 9020 provides that "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest."[9] Prior to the 2001 amendments to the Bankruptcy Rules, the language of Rule 9020 was more expansive. The superseded version of Bankruptcy Rule 9020(a) stated that "[c]ontempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record."

---

[9] Bankruptcy Rule 9014 governs the procedure for contested matters.

The prior version of Bankruptcy Rule 9020(a) was substantially similar to former Bankruptcy Rule 920(a)(1). Under that version of the Bankruptcy Rule, "[m]isbehavior prohibited by § 41(a)(2) of the [Bankruptcy] Act [could] be punished summarily by the [bankruptcy judge] as contempt if he saw or heard the conduct constituting the contempt and it was committed in his actual presence." Section 41(a)(2) of the Bankruptcy Act prohibited a person, in a proceeding before the bankruptcy judge, from "misbehav[ing] during a hearing or so near the place thereof as to obstruct the same." Chandler Act, Pub. L. No. 75-696 §41, 52 Stat. 840, 859 (1839), *amended by* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978), *amended by* 28 U.S.C. §§ 101, et seq.

Despite the changes made to Bankruptcy Rule 9020 by the 2001 amendments, those changes were not intended to affect the contempt power of a bankruptcy judge:

> This rule, as amended, does not address a contempt proceeding initiated by the court sua sponte.
>
> Whether the court is acting on motion under this rule or is acting sua sponte, these amendments are not intended to extend, limit, or otherwise affect either the contempt power of a bankruptcy judge or the role of the district judge regarding contempt orders. Issues relating to the contempt power of bankruptcy judges are substantive and are left to statutory and judicial development, rather than procedural rules.

Fed. R. Bankr. P. 9020 advisory committee's note.

The Court finds that Mr. Guthrie provided false and misleading testimony at the November 7 Hearing. Specifically, the Court finds that Mr. Guthrie intentionally misrepresented Warehouse's financial condition as well as Warehouse's intention to comply with the Court's October 15 Order. Intentional misrepresentation includes "actual knowledge that it was incorrect" and "reckless indifference to the actual facts, without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact

7

correct." *Morimura, Arai & Co. v. Taback*, 279 U.S. 24 (1929) (in the context of an objection to discharge).  Mr. Guthrie deliberately led the Court to believe that Warehouse lacked any ability to pay a damages award.  *See, e.g.*, Hr'g Tr. 70:14-15, Nov. 7, 2012.  Mr. Guthrie failed to disclose material facts that bore directly upon the true nature of Warehouse's financial condition.  Mr. Guthrie further led the Court to believe that Warehouse had purged itself of all contemptible conduct as of the November 7 Hearing and was prepared to adhere to the strictures of the law going forward.  The Court took the Debtor's ability to pay and the Debtor's willingness, going forward, to comply with the dictates of law into consideration in fashioning its award for relief.

In making its determinations at the November 7 Hearing concerning the appropriate amount of punitive damages to award for a willful violation of the automatic stay, the Court had to consider "the nature of the creditor's conduct, the degree of contempt shown for adherence to the law, the nature and extent of harm to the debtor, and the creditor's ability to pay." *Brown v. Pit Road Auto Serv.* (*In re Brown*), No. 07-30283-KRH, 2007 WL 2254664, at *3 (Bankr. E.D. Va. Aug. 3, 2007) (citing *Wills v. Heritage Bank* (*In re Wills*), 226 B.R. 369, 376 n.8 (Bankr. E.D. Va. 1998)).  Mr. Guthrie's intentional misrepresentations went to the very heart of the issues the Court had to determine.  Had the Court been aware of Warehouse's true financial condition and that its intentional refusal to pay post-petition rent was continuing, the punitive damages award may very well have been different.  As such, Mr. Guthrie's intentional misrepresentations at the November 7 Hearing constituted misbehavior amounting to an obstruction of justice.  For these reasons, the Court has found Mr. Guthrie to be in contempt and it has awarded sanctions against him in the amount of $30,000.

A separate Order shall issue.

ENTERED: _____

/s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Copies to:

**Hookup, L.L.C.**
8204 Chamberlayne Road
Richmond, VA  23227

**Robert J. Rogers**
8204 Chamberlayne Road
Richmond, VA  23227

**David K. Spiro**
**Sheila G. de la Cruz**
Hirschler Fleischer, P.C.
P.O. Box 500
Richmond, VA  23218-0500

**Warehouse Stores, Inc.**
1200 W. Marshall Street
Richmond, VA  23220

**Steven S. Biss**
Law Office of Steven S. Biss
300 West Main Street
Suite 102
Charlottesville, VA  22903

**Joseph F. Guthrie**
11072 Summer Breeze Drive
Glen Allen, VA  23059

**Robert B. Van Arsdale**
Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, VA  23219

**Bruce H. Matson**
LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
P.O. Box 2499
Richmond, VA  23218-2499